JUDGE MARRERO

07 CV 10600

Anthony Carabba, Jr. (AC 1487)
Jeffrey Schulman (JS 0702)
Carabba Locke LLP
100 William Street
New York, New York 10038
(212) 430-6400

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CASEY WITWICKI,

               Plaintiff,

       -against-

METRO NEW YORK INC.,
METRO USA INC., EDWARD ABRAMS and
MICHAEL JULIANO,

               Defendants.

------------------------------------------------------------X

ECF Case

Civil Action No._____

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff CASEY WITWICKI, by and through her attorneys, Carabba Locke LLP,

alleges and complains as follows:

## INTRODUCTION

1.    Plaintiff brings this action for Defendants' unlawful interference with the

exercise of her rights, and discrimination and retaliation against her for such exercise, in

violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (the "FMLA") and

for perceived and actual disability discrimination in violation of the New York State Human

Rights Law, N.Y. Exec. Law § 290, *et seq.,* (the "Human Rights Law") and the New York

City Administrative Code § 8-101, *et seq.* (the "City Law") and for aiding and abetting

perceived and actual disability discrimination in violation of the Human Rights Law and City

Law.

2.    Plaintiff seeks compensatory and punitive damages, liquidated damages, attorneys' fees and other appropriate relief pursuant to the FMLA, Human Rights Law and City Law.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over Plaintiff's FMLA claims pursuant to 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331.

4.    This Court may assert supplemental jurisdiction over Plaintiff's Human Rights Law and City Law claims as authorized by 28 U.S.C. § 1367(a).

5.    Venue is proper within this Judicial District pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred in the Southern District of New York.

## THE PARTIES

6.    Plaintiff Casey Witwicki ("Plaintiff") resides in the County, City and State of New York and is a citizen of the United States.

7.    Upon information and belief, Defendant Metro New York Inc. ("Metro") is a corporation organized and existing under the laws of the State of Delaware and is authorized to do business in the State of New York.  Upon information and belief, Metro maintains its corporate offices at 44 Wall Street, New York, New York.

8.    Upon information and belief, Defendant Metro USA Inc. is a corporation organized and existing under the laws of the State of Delaware and is the parent company of Metro.

2

9.    Upon information and belief, Defendant Edward Abrams ("Abrams") is a resident of the State of New Jersey.

10.    Upon information and belief, Defendant Michael Juliano ("Juliano") is a resident of the State of Connecticut.

11.    At all times relevant to the Complaint, Plaintiff was an "eligible employee" of Metro within the meaning of 29 U.S.C. § 2611(2) in that Plaintiff was employed by Metro for more than twelve months prior to the events underlying this lawsuit; was employed by Metro for at least 1,250 hours during the 12 month period immediately proceeding the commencement of the leave which underlies this lawsuit; and Defendant Metro employed more than 50 employees within a 75 mile radius of where Plaintiff worked.

12.    At all times relevant to the Complaint, Plaintiff suffered from a serious health condition within the meaning of 29 U.S.C. § 2611(11). Specifically, Plaintiff suffered from intractable migraine headaches, a chronic condition which caused episodes of incapacity, required periodic doctor visits for treatment and continued over an extended period of time.

13.    At all times relevant to the Complaint, Defendant Metro was an employer within the meaning of 29 U.S.C. § 2611(4) in that it is engaged in an industry affecting interstate commerce and employed more than 50 employees for each working day during each of 20 or more calendar workweeks in the current and preceding calendar year.

14.    At all times relevant to the Complaint, Defendant Metro was an employer within the meaning of Human Rights Law § 292(5) and City Law § 8-102(5).

15.    At all times relevant to the Complaint, Defendants Abrams and Juliano were employers within the meaning of 29 U.S.C. § 2611(4) in that they acted in the interest of Metro to Plaintiff and certain of Metro's other employees.

16.    Prior to commencing this action, Plaintiff served a copy of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel for the City of New York.

## STATEMENT OF FACTS

17.    Plaintiff was employed as an Account Executive at Metro beginning in or about November 2005.  During the course of her employment, Plaintiff was responsible for selling advertising in Metro's New York newspaper to various industries.  Plaintiff was compensated with a base salary and also earned commissions based on sales.

18.    Defendant Abrams became Plaintiff's direct supervisor in or about September 2006, when he was named Sales Director.

19.    Defendant Juliano became Metro's Executive Sales Director in or about November 2006.  At that time, Abrams began reporting to Juliano.

20.    Plaintiff's work performance was as good -- or better -- than most of the other Account Executives at Metro.  She was consistently in or near the top 25% of Metro's sales staff in terms of sales relative to target.

21.    In recognition of her performance, Plaintiff received an increase in her base salary of $12,000 (from $43,000 to $55,000) in or about June 2006, at a time when Metro was engaging in significant downsizing of its staff.

22.    Plaintiff suffers from intractable migraine headaches. Her migraines worsened in or about April 2007 to the point that she required increased medical attention. Despite this, she continued to work (and perform at an exceptionally high level) until July 2007.

23.    Plaintiff began informing her supervisors and Metro's Human Resources staff about this serious health condition, including providing a doctor's note to them. They immediately began expressing displeasure. For example, on one occasion when Plaintiff informed Juliano that she would not be able to attend a meeting due to a severe migraine headache, Juliano expressed displeasure and disbelief by stating, "you look good, so you feel good."

24.    On the morning of July 10, 2007, due to her worsening migraine condition, Plaintiff met with Andrey Harmaty, Metro USA's Director of Human Resources (which ran the Human Resource function at Metro), and requested a leave of absence and began filling out the requisite paperwork. That afternoon she informed Abrams and Juliano that she had requested medical leave earlier in the day due to her condition. Her leave was approved and began on July 12, 2007.

25.    In a letter to Plaintiff dated July 31, 2007, Metro confirmed that her leave of absence qualified as FMLA leave and "officially designated" it as such. The letter also stated that the expected date of Plaintiff's return to work was September 3, 2007.

26.    Metro terminated Plaintiff's employment on or about August 30, 2007, despite that her FMLA leave had not expired and despite that she told the Company that she was ready and medically able to return to work on September 3, 2007, as scheduled. Although she was

informed of the decision to fire her on August 30, 2007, Metro failed to give her any reason for that decision.

27.    On the day after she was terminated, Plaintiff complained to Metro that her termination was in retaliation for her taking FMLA leave. In response, Metro again provided no reason for her termination, other than to say that Plaintiff was an "at-will" employee and, therefore, it was Metro's "right" to terminate her employment.

28.    This is not the first time that Metro has retaliated against an employee for taking FMLA leave. For example, upon information and belief, upon returning from a leave to give birth to a child, former Metro employee Dorrie Mailman had certain of her more lucrative accounts stripped from her and was reassigned to less lucrative accounts.

## FIRST CAUSE OF ACTION

### FMLA -- Interference

29.    Plaintiff realleges and incorporates by reference paragraphs 1 through 28 of the Complaint as if fully set forth herein.

30.    By the aforementioned actions, Defendants, separately and together, have interfered with, restrained and denied Plaintiff her rights under the FMLA, in violation of 29 U.S.C. §§ 2612(a), 2614(a) and 2615(a).

31.    As a result of Defendants' violation of the FMLA, Plaintiff has suffered severe damage, including deprivation of income and benefits, termination of employment and loss of opportunity for advancement and promotion.

## SECOND CAUSE OF ACTION

### FMLA -- Retaliation

32.    Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.    By the aforementioned actions, Defendants, separately and together, have retaliated against Plaintiff for exercising her rights under the FMLA, in violation of 29 U.S.C. § 2615(a).

34.    As a result of the retaliation engaged in by Defendants, Plaintiff has suffered severe damage, including deprivation of income and benefits, termination of employment and loss of opportunity for advancement and promotion.

## THIRD CAUSE OF ACTION

### Disability Discrimination (Actual and Perceived)

35.    Plaintiff realleges and incorporates by reference paragraphs 1 through 34 of the Complaint as if fully set forth herein.

36.    At the time of her termination, Plaintiff was a qualified individual with an actual disability as defined by Human Rights Law § 292(21) and City Law § 8-102(16) who was able to perform the essential functions of her position in a reasonable manner with or without reasonable accommodation.

37.    Defendants regarded and/or perceived Plaintiff as disabled (as defined by Human Rights Law § 292(21) and City Law § 8-102(16)(a)) by virtue of her medical condition as alleged above.

38.    Defendants terminated Plaintiff because of her actual or perceived disability.

39.     Plaintiff was qualified to (and did) perform the essential functions of her position, with or without reasonable accommodation.

40.     By the aforementioned actions, Defendants, separately and together, have discriminated against Plaintiff in the terms, conditions, and privileges of her employment, on the basis of his actual or perceived disability, in violation of the Human Rights Law § 296(1) and City Law § 8-107(1).

41.     As a result of the discrimination engaged in by Defendants, Plaintiff has suffered severe damage, including deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, humiliation and damage to reputation and career.

## FOURTH CAUSE OF ACTION

### Aiding and Abetting Disability Discrimination (Actual and Perceived)

42.     Plaintiff realleges and incorporates by reference paragraphs 1 through 41 of the Complaint as if fully set forth herein.

43.     At the time of her termination, Plaintiff was a qualified individual with an actual disability as defined by Human Rights Law § 292(21) and City Law § 8-102(16) who was able to perform the essential functions of her position in a reasonable manner with or without reasonable accommodation.

44.     Defendants regarded and/or perceived Plaintiff as disabled (as defined by Human Rights Law § 292(21) and City Law § 8-102(16)(a)) by virtue of her medical condition as alleged above.

45.     Defendants terminated Plaintiff because of her actual or perceived disability.

46.    Plaintiff was qualified to (and did) perform the essential functions of her position, with or without reasonable accommodation.

47.    By the aforementioned actions, Defendants, separately and together, have aided and abetted discrimination against Plaintiff in the terms, conditions, and privileges of her employment, on the basis of his actual or perceived disability, in violation of the Human Rights Law § 296(6) and City Law § 8-107(6).

48.    As a result of the aiding and abetting engaged in by Defendants, Plaintiff has suffered severe damage, including deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, humiliation and damage to reputation and career.

**WHEREFORE**, Plaintiff demands that judgment be entered in her favor and that the Court order and award Plaintiff the following relief against Defendants:

A.    Damages in the form of (i) back pay with interest based on Plaintiff's appropriate compensation had her rights under the FMLA not been violated and had she not been discriminated against; and (ii) front pay;

B.    Compensatory damages for her emotional pain and suffering, mental anguish, distress, humiliation, and loss of reputation in an amount to be determined at trial;

C.    Punitive damages in an amount to be determined at trial;

D.    Liquidated damages pursuant to 29 U.S.C § 2617(a)(1)(A)(iii);

E.    Attorneys' fees;

F.    Costs and disbursements;

G.    Interest; and

H.    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury as to all issues in the above matter.

Dated: New York, New York
       November 26, 2007

Respectfully submitted,

CARABBA LOCKE LLP

By:_____
       Anthony Carabba, Jr. (AC 1487)
       Jeffrey Schulman (JS 0702)

100 William Street
New York, New York 10038
(212) 430-6400

*Attorneys for Plaintiff*